WENTWORTH, Judge.
Appellant, a Department of Health and Rehabilitative Services client, seeks review of a final administrative order denying him dental treatment on grounds that he resides at home rather than in an HRS licensed facility, and that his dental condition is not directly related to a developmental disability.
Appellant contends HRS policy denying dental treatment to disabled clients residing in their own homes, except where there is a finding that the dental needs are directly related to a developmental disability, conflicts with the legislative scheme set forth in Chapter 393, Florida Statutes, violates equal protection of law, and is invalid as an unpromulgated rule. We reverse.
Appellant is a 31 year old blind and retarded man living at home with his mother. Appellant has been a client of HRS since 1983, at which time HRS prepared a “habil-itation plan,” finding that appellant needed training in all areas of self care and that his dental condition was “dismal” because of neglect. In November 1984, HRS authorized emergency dental care for appellant because he was in pain from abscessed and infected teeth. Ten teeth were extracted in a hospital under general anesthetic. HRS considered this treatment to be an exception to its policy of not providing dental care to retarded clients who reside at home.
Following appellant’s hospitalization for the extractions, HRS determined that appellant would continue to require dental treatment under sedation, but the agency refused to assume responsibility for the cost of such treatment. Appellant has 10 to 15 teeth remaining, all of which are decayed and in danger of abscessing. He *180 cannot be treated in a dental office and is unreceptive to oral hygiene.
Appellant contested the HRS action in a section 120.57 hearing. Following the hearing, HRS determined that denial of dental treatment was lawful because of HRS’ duty to allocate limited funds. The final order noted that:
the idea of the theoretical entitlement of the Petitioner to be afforded the services may be a hollow promise, given the budgetary constraints under which the Respondent conducts its operations. Respondent is required under Florida Statute 393.14 to spend only the funds which are allocated to HRS for Developmental Services. The Legislature has allocated funds separately for those eligible clients living at home and those in HRS residential settings. Since there are insufficient funds to pay for all needed services, it is HRS’s responsibility to prioritize the services which will be delivered in each class.
Appellant was accorded only support services in his home for purposes of educating him to accept daily dental care, and to assist his mother in providing such care.
We recognize, of course, that HRS cannot provide all services to which its clients may be entitled when the legislature has not appropriated sufficient funds to carry out the expressed intent of Chapter 393. But the further contention is made that because the legislature has by line item budget separated funding for services to residential and nonresidential clients, HRS may provide the services here in question to residential clients while denying them to nonresidential clients.
Under section 393.062, Florida Statutes, HRS is authorized to provide such services as will maximize clients’ potential for independent living. Section 393.066(2) prohibits HRS, in providing services, from discriminating among clients based upon where they live. An HRS client services manual states, however, that routine dental services are not provided to clients living at home except where 1) dental treatment supports an habilitative goal or 2) is directly related to a developmental disability. The manual states that clients residing in an HRS facility are to be provided routine dental care whether or not such care is directly related to a developmental disability. HRS has interpreted the developmental disability requirement to apply only to clients whose dental health has deteriorated as a side effect of anti-convulsant drugs. Appellant’s dental problems were found not to be directly related to his disability.
We conclude that HRS’ refusal to provide appellant dental treatment because he does not reside in an HRS facility is contrary to the mandate of section 393.-066(2), Florida Statutes. The separate allocation of funds does not, in terms or in necessary intendment, entitle HRS to deny categorically to nonresidential clients the treatment service which it provides to institutional residents in this case. Under the provisions of Chapter 393, HRS’ duty to nonresidential clients is no less than its duty to residential clients, tempered of course by the unavoidable exhaustion of funds in any circumstances.
The clear intent of section 393.-066(2), supra, is that such rights as are accorded by that chapter shall be provided without invidious discrimination. See Florida Department of Transportation v. E.T. Legg & Co., 472 So.2d 1336 (Fla. 4th DCA 1985). To comply with equal protection requirements, a classification must bear some reasonable relationship to a legitimate state objective. Renau v. State, 436 So.2d 268 (Fla. 1st DCA 1983). The HRS client services manual fails to adequately articulate any adequate basis for the distinction in services between residential and nonresidential clients, and the record in this case provides none.
The creation of two such classes for purposes of providing routine professional dental treatment appears to be “an agency statement of general applicability ... intended to be applied with the force of a rule of law.” State, Department of Administration v. Stevens, 344 So.2d 290, 296 (Fla. 1st DCA 1977). When an agency chooses to proceed through such non-rule policy, it assumes the burden of articulating the rule applicable in the case with the *181 same justification as if it were an adopted rule. City of Delray Beach v. Department of Transportation, 456 So.2d 944 (Fla. 1st DCA 1984). In this case, absent proof of exhaustion of funds appropriated for non-residential clients, HRS failed to meet its burden in defense of the stated policy when it offered only the cited evidence of fiscal restraints imposed by the separate legislative appropriations.
In addition, we also conclude from a study of the record that the determination against relationship of appellant’s dental condition to a developmental disability is contradicted by the evidence showing his retardation to be integral to his dental condition.
The order is reversed and the cause remanded for further proceedings consistent herewith.
NIMMONS, J„ and GARY, WILLIAM L., Associate Judge, concur.